IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LIBERTY INSURANCE CORP. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ALICIA KECK, ET AL. | : | NO. 11-1242 |

**MEMORANDUM**

**Padova, J.**                                                                                                                         **August 22, 2011**

      Liberty Insurance Corp. ("Liberty") brought the instant action against Alicia Keck, George Hickey, Edward Roop, Carol Roop, Eagles Stadium Operator, LLC, and National Event Services, Inc. seeking a declaration that it has no duty under a homeowner's insurance policy issued to the Roops to defend or indemnify George Hickey in connection with a lawsuit brought by Alicia Keck against Hickey, Eagles Stadium Operator, LLC and National Events Services, Inc. in the Philadelphia County Court of Common Pleas. Hickey and the Roops have asserted a Counterclaim against Liberty in the instant action, asserting that Liberty denied coverage in bad faith, in violation of 42 Pa. Cons. Stat. Ann. § 8371. Before the Court is Liberty's Motion to Dismiss the Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Motion is denied.

**I.    BACKGROUND**[1]

      On or about June 29, 2009, Alicia Keck was assaulted by George Hickey while attending a

---

[1] The facts recited in this section of the Memorandum are drawn from Liberty's Complaint and its attachments and from the Answer and Counterclaim filed by Hickey, Edward Roop and Carol Roop (the "Hickey Answer").

concert at Lincoln Financial Field in Philadelphia. (Keck Compl. ¶¶ 8, 13.[2]) Hickey punched Keck twice in the face, once on her nose and once in her left eye. (Id. ¶ 13.) Hickey fled before security arrived. (Id. ¶ 17.) As a result of the assault, Keck sustained numerous injuries, including head injuries, nasal fractures, a left cheekbone fracture, and an orbital blowout fracture. (Id. ¶ 20.) As a result of her injuries, Keck has suffered pain, embarrassment, anxiety, and depression, and has been prevented from continuing her previous modeling career. (Id. ¶¶ 21-22.)

Hickey was criminally charged in the Court of Common Pleas of Philadelphia County with recklessly endangering another person, simple assault, and aggravated assault in connection with his assault of Keck. (Commonwealth v. Hickey, Docket No. CP-51-CR-10582-2009 (Phila. Cnty. Ct. of Common Pleas).[3]) On March 22, 2010, he pled guilty to aggravated assault and was sentenced to five years of probation and restitution in the amount of $2,195.39. (Id. at 3, 8.) The other charges against Hickey were nolle prossed. (Id. at 3.)

Keck filed suit against Hickey, Eagles Stadium Operator, LLC, and National Events Services, Inc. in the Court of Common Pleas of Philadelphia County. (Keck Compl.) The Keck Complaint asserts a claim against Hickey for negligence. (Id. ¶¶ 57-60.) Hickey made a demand of Liberty for a defense and for indemnification with respect to the negligence claim asserted against him by Keck.

---

[2]The Keck Complaint, captioned Alicia Keck v. Eagles Stadium Operator, LLC and Nat'l Events Servs., Inc. and George Hickey, Sept. Term, 2010 No. 3675 (Phila. Cnty. Ct. of Common Pleas), is attached to the Liberty Complaint as Exhibit B .

[3]We may consider "public records (including court files, orders, records and letters of official actions or decisions of government agencies and administrative bodies)" in deciding a motion pursuant to Rule 12(b)(6). Miller v. Cadmus Commc'ns, Civ. A. No. 09-2869, 2010 WL 762312, at *2 (E.D. Pa. Mar. 1, 2010) (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994)). The docket from Commonwealth v. Hickey is attached to the Liberty Complaint as Exhibit C .

(Liberty Compl. ¶ 14; Hickey Answer ¶ 14.)  Hickey made his demand pursuant to a homeowners insurance policy issued by Liberty to Edward and Carol Roop effective March 9, 2009 through March 9, 2010, policy number H37-288-330730-409 (the "Liberty Policy").[4]  (Liberty Compl. ¶ 11, Hickey Answer ¶ 11.)  At the time he assaulted Keck, Hickey lived with Carol and Edward Roop, his mother- and father-in-law. ( (Liberty Compl. ¶ 12, Hickey Answer ¶ 12.) The Liberty Policy includes personal liability coverage in the amount of $500,000 per occurrence. ( (Liberty Compl. ¶ 11, Hickey Answer ¶ 11.)

> The Liberty Policy provides for personal liability coverage as follows:
>
>> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
>>
>> 1. Pay up to our limit of liability for the damages for which the "insured" is legally liable . . . ; and
>>
>> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

(Liberty Policy at 12, Section II - Liability Coverages.) The Liberty Policy defines occurrence as follows:  "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:  a. 'Bodily injury'; or b.  'Property damage.'"  (Id. at 1, Definitions ¶ 5.) The Liberty Policy excludes coverage for personal liability as follows:

---

[4]A copy of the Liberty Policy is attached to the Liberty Complaint as Exhibit A.

> **Coverage E - Personal Liability** and **Coverage F - Medical Payments to Others** do not apply to "bodily injury" or "property damage":
>
> **a.** Which is expected or intended by the "insured", even if the resulting "bodily injury" or "property damage"
>
> (1) is of a different kind, quality, or degree than initially expected or intended; or
>
> (2) is sustained by a different person, entity, real or personal property, than initially expected or intended.
>
> However, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

(Id. at 12, Section II - Exclusions, as amended by Amendatory Endorsement FMHO 2493 at 2.)

On February 23, 2011, Liberty filed the instant Action for Declaratory Judgment, seeking a Declaration that it is not required to indemnify Hickey from any judgment, verdict, or award entered against him as a result of the Keck lawsuit, and that it is not required to provide a defense to Hickey in connection with his assault of Keck. (Liberty Compl. ¶ 30.) Liberty asserts in its Complaint that Keck's injuries did not result from an "occurrence" as defined by the policy because they were not the result of an accident, but were expected or intended by Hickey as they resulted from an aggravated assault. (Id. ¶¶ 28-29.) Liberty further asserts in its complaint that, because Keck's injuries were expected or intended by Hickey, they are specifically excluded from coverage under the Liberty Policy. (Id. ¶ 29.)

On March 21, 2011, George Hickey, Carol Roop, and Edward Roop filed an Answer to the Liberty Complaint in which they assert a Counterclaim against Liberty for bad faith pursuant to 42 Pa. Cons. Stat. Ann. § 8371. (Hickey Answer ¶ 40.) The Counterclaim alleges that Liberty violated

the terms of the Liberty Policy, and breached its duty to Hickey, by denying coverage without any reasonable basis for doing so.  (Id. ¶ 39.)  The Counterclaim further alleges that Liberty acted in bad faith by denying coverage and by refusing to defend Hickey in connection with the Keck lawsuit based solely on its review of the Keck Complaint, and without conducting any investigation of the facts underlying Keck's allegations against Hickey.  (Id. ¶¶ 36-39.)

**II.     LEGAL STANDARD**

Liberty asks that we dismiss the Counterclaim pursuant to Rule 12(b)(6) on the ground that the Counterclaim fails to state a claim upon which relief may be granted.  When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the [counterclaim], exhibits attached to the [counterclaim], [and] matters of public record, as well as undisputedly authentic documents if the [counterclaimant]'s claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  We take the factual allegations of the counterclaim as true and draw all reasonable inferences in favor of the counterclaimant.  Id. at 229 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  To survive a motion to dismiss brought pursuant to Rule 12(b)(6), "[t]he pleading must contain sufficient factual allegations so as to state a facially plausible claim for relief."  Id. at 230 (citing Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009)).  "A claim possesses such plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Gelman, 583 F.3d at 190).

**III.    DISCUSSION**

The Pennsylvania insurance bad faith statute provides as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371.  In order to succeed on a claim of bad faith of an insurer pursuant to 42 Pa. Cons. Stat. Ann. § 8371, "a plaintiff must satisfy a two-prong test: 1) the insurer did not have a reasonable basis for denying coverage and 2) the insurer knew or recklessly disregarded its lack of a reasonable basis when it denied coverage."  Post v. St. Paul Travelers Ins. Co., 609 F. Supp. 2d 382, 385 (E.D. Pa. 2009) (citing Greene v. United Servs. Auto. Ass'n, 936 A.2d 1178, 1189 (Pa. Super. Ct. 2007)).  The party making a bad faith claim need not establish that the insurer was motivated by "self-interest or ill will," but evidence of those motivations "is probative of the second element . . . i.e., [that] 'the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim.'"  Greene, 936 A.2d at 1191 (quoting Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994)).  The Pennsylvania Superior Court has cautioned that "'mere negligence or bad judgment is not bad faith.'"  Id. at 1188 (quoting Condio v. Erie Ins. Exchange, 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006)).  Furthermore, "'[S]ection 8371 is not restricted to an insurer's bad faith in denying a claim. An action for bad faith may [also] extend to the insurer's investigative practices.'"  Id. at 1187 (alterations in original) (quoting Condio, 899 A.2d at 1142).

Indeed, the term "bad faith" "encompasses a wide variety of objectionable conduct" including

"'lack of good faith investigation into facts, and failure to communicate with the claimant[;]'" and "'arbitrarily refus[ing] to accept evidence of causation.'" Greene, 936 A.2d at 1187-88 (quoting Condio., 899 A.2d at 1143). Moreover, "[a]n insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy." Am. and Foreign Ins. Co. v. Jerry's Sport Center, Inc., 2 A.3d 526, 541 (Pa. 2010) (citations omitted). "The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint." Id. (citing Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007)). When we make this determination, we take the "'factual allegations of the underlying complaint against the insured . . . as true and liberally construe [them] in favor of the insured.'" Id. (quoting Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999)). "If coverage (indemnification) depends upon the existence or nonexistence of undetermined facts outside of the complaint, until the claim is narrowed to one patently outside the policy coverage, the insurer has a duty to defend claims against its Insured." State Farm Fire and Cas. Co. v. Dunleavy, 197 F. Supp. 2d 183, 187 (E.D. Pa. 2001) (citing Stidham v. Millvale Sportsmen's Club, 618 A.2d 945, 953-54 (Pa. Super. Ct. 1992)).

      Liberty argues that the Counterclaim does not state a claim upon which relief may be granted because the Keck Complaint does not contain any allegations of fact that could possibly trigger coverage under the Liberty Policy. Liberty contends that it only has an obligation to provide coverage and a defense to Hickey under the Liberty Policy if Keck's injuries were accidental, and that it had no duty to investigate the facts underlying the Keck Complaint because the Complaint does not allege that her injury was accidental. Liberty further argues that it has no duty to defend

7

Hickey in the Keck action because Pennsylvania law does not require an insurer to defend allegations of intentional acts where the policy language excludes intentional conduct from its coverage.

The Liberty Policy does indeed exclude from personal liability coverage bodily injury "[w]hich is expected or intended by the 'insured.'" (Liberty Policy at 12, Section II - Exclusions, as amended by Amendatory Endorsement FMHO 2493 at 2.)  That, however, is not the end of our analysis.  The Keck Complaint does not allege that Hickey's actions were intentional.  The Keck Complaint refers to Hickey's actions as an assault and as an aggravated assault, and states that he was convicted of aggravated assault. (Keck Complaint ¶¶ 16-17, 25, 33-35, 48-50, 60.)

"[A] conviction in prior criminal proceedings cannot preclude a victim from litigating the issue of the insured actor's intent where a determination of intent was not essential to the conviction."  Dunleavy, 197 F. Supp. 2d at 188 (citing Stidham, 618 A.2d at 954).  Hickey's conviction cannot justify Liberty's refusal to defend and indemnify Hickey unless his criminal proceedings established "the extent, if any, of his conscious awareness of [his] action[s] or the substantial likelihood of the results." Id. (citing Stidham, 618 A.2d 955-56).  "Moreover, imbibed intoxicants must be considered in determining if the actor has the ability to formulate an intent." Stidham, 618 A.2d at 953 (citing Nationwide Mut. Ins. Co. v. Hassinger, 473 A.2d 171, 176 (Pa. Super. Ct. 1984)).

The Keck Complaint does not allege that Hickey's aggravated assault conviction required a determination that he intended to cause Keck's injuries.  Intent is not an element of the crime of aggravated assault under Pennsylvania law.  See 18 Pa. Cons. Stat. Ann. § 2702(a) (stating that "[a] person is guilty of aggravated assault if he:  (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting

8

extreme indifference to the value of human life"); see also Dunleavy, 197 F. Supp. 2d at 188 (explaining that intentional conduct is not an element of aggravated assault because that crime "may be predicated on reckless conduct"). Accordingly, an aggravated assault conviction "may be predicated upon reckless . . . conduct which does not bar recovery pursuant to an insured's policy under prevailing Pennsylvania case law." State Farm Mut. Auto. Ins. Co. v. Neff, Civ. A. No. 04-CV-0087, 2006 WL 3484340, at *5 (M.D. Pa. Nov. 30, 2006) (citing Dunleavey, 197 F.Supp. 2d at 188)).

Furthermore, the Keck Complaint alleges that Hickey imbibed intoxicants prior to punching Keck. (Keck Compl. ¶ 54.) Given that Pennsylvania law states that a criminal conviction is not a bar to recovery "where a determination of intent was not essential to the conviction," Dunleavy, 197 F. Supp. 2d at 188 (citation omitted), and that "imbibed intoxicants must be considered in determining if the actor has the ability to formulate an intent," Stidham, 618 A.2d at 953 (citation omitted), we conclude that the Counterclaim plausibly alleges that Liberty's disclaimer of coverage based solely on a review of the Keck Complaint was unreasonable and that Liberty knew or recklessly disregarded its lack of reasonable basis when denying Hickey's claim for coverage. See Post, 609 F. Supp. 2d at 385 (citation omitted). We further conclude that the Counterclaim plausibly alleges that Liberty acted in bad faith in failing to investigate Hickey's claim and in refusing to defend Hickey in the Keck Litigation. See Greene, 936 A.2d at 1188.

## IV.     CONCLUSION

For the foregoing reasons, we conclude that the Counterclaim alleges a plausible claim that Liberty acted in bad faith by unreasonably denying coverage based on the allegations of the Keck Complaint, by failing to conduct a good faith investigation into the facts underlying Keck's

9

negligence claim against Hickey, and by refusing to defend Hickey in the Keck litigation. Liberty's Motion to Dismiss the Counterclaim is accordingly denied. An appropriate order follows.

BY THE COURT:

/s/ John R. Padova

John R. Padova, J.